IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

F I L E D
FEB - 3 2010
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| Patricia K. Waltman, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 3:10CV072(HEH) |
| | ) |
| King William County School Board and | ) |
| Dr. Mark Jones, in his capacity as | ) |
| Superintendent of Schools for King William | ) |
| County, | ) |
| | ) |
| Defendant. | ) |

SERVE:   The King William County School Board
         Brad A. King, Esq., School Board Attorney
         ThompsonMcMullin
         100 Schockoe Slip
         Richmond, Virginia 23219

         Dr. Mark Jones, Superintendent
         By Brad King, School Board Attorney
         ThompsonMcMullin
         100 Schockoe Slip
         Richmond, Virginia 23219

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

1.  This is a civil action for declaratory and injunctive relief and the imposition of civil penalties under the Federal Water Pollution Control Act, otherwise known as the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 through 1387, for the present and ongoing violation of the Act and its implementing regulations. This case arises under the citizen suit provisions of the CWA, which was enacted by Congress to "restore and maintain the chemical, physical and biological integrity of the Nation's waters." 33 U.S.C. §§ 1251(a) and 1365(a). In furtherance of these objectives, the CWA prohibits the discharge of any pollutant



into navigable waters except as authorized by designated sections of the statute. 33 U.S.C. §1311(a). This action seeks an order enjoining Defendant's continuing and ongoing violation of the CWA, and its implementing regulations at 40 C.F.R. Part 122 at the King William High School sediment retention pond.

### Jurisdiction and Venue

2. This court has subject matter jurisdiction over the claims set forth in this complaint pursuant to 33 U.S.C. § 1365(a) (citizen suit provision of the CWA) and 28 U.S.C. § 1331 (federal question statute). The relief requested is authorized pursuant to 33 U.S.C. §§ 1319(d) and 1365(a), and 28 U.S.C. §§ 2201 and 2202.

3. In compliance with 33 U.S.C. § 1365(b), on December 4, 2009, Plaintiff Waltman notified the Administrator of the United States Environmental Protection Agency ("EPA"), EPA's Regional Administrator in Region 3, the Virginia Department of Environmental Quality, and Defendant of the alleged violations of the CWA and Plaintiff's intent to sue. A copy of Plaintiffs' notice of intent to sue letter, along with return receipts and evidence of service, is attached hereto as Exhibit A to this Complaint. Plaintiff's sixty day notice letter is in full compliance with all requirements of 33 U.S.C. §1365(b) and 40 C.F.R. Part 135, Subpart A and thus confers subject matter jurisdiction on this Court.

4. Sixty days have passed since notice was served. Defendant has violated, and remains in violation of, the CWA, the implementing regulations, and the allegations in the notice letter. Neither the federal or state government has commenced and/or diligently prosecuted a civil or criminal action in a court of the United States or a state court to require compliance with the standards or limitations alleged herein.

5. Defendant's sedimentation pond is located in King William County, Virginia. Venue is therefore proper in the Eastern District of Virginia pursuant to 33 U.S.C. § 1365(c), and 28 U.S.C. § 1391(b) and (c).

6. Plaintiff has standing to pursue this action because she is an owner of property that has been adversely affected by Defendant's violations of law, the injuries suffered by Plaintiff are fairly traceable to the actions of the Defendant, and the injuries complained of by Plaintiff can be remedied by the relief requested herein. Accordingly, Plaintiff has standing to bring this action, as described in more detail below, and this Court has subject matter jurisdiction over this action.

**Parties**

7. Patricia K. Waltman is the owner of approximately 16 acres of farm land property in King William County, Virginia, a portion of which adjoins land owned by the King William County School Board, and is generally used as the land property for the King William Public High School. Waltman has resided on her property since 1989, using the land for farm use, dog training, a residence and related agricultural uses, and used her land without conflict or interference with the adjoining land use of the King William High School. In March 2007, however, the newly constructed King William High School storm water retention pond was built and put into operation. Although Waltman had experienced little or no noticeable storm water run-off from the school property prior to this time, the new retention basin discharged, and continues to discharge, excess storm water directly to the Waltman land, cutting channels through the wooded area of the Waltman land and entering a 100 year old spring fed pond on the Waltman property. The excessive storm water discharges have polluted the pond with nutrients and sediment, and the excessive storm water flows exceed the storage capacity of the Waltman

pond, causing it to overflow its earthen dam, severely erode the base of the dam and now threatens to cause complete failure of the dam. These discharges, all in violation of federal law, have severely damaged the pond, destroyed Waltman property, damaged property value and interfered with the lawful use of such property by Waltman.

8. The King William County School Board is the owner of property in King William County generally known as the King William Public High School. In 2006 the King William School Board caused certain improvements and construction at the School, the result of which was to divert all, or nearly all, of the storm water runoff from the School grounds to a new storm water retention basin whose discharge point was located directly at the fence line of the Waltman property.

9. Dr. Mark R. Jones is the Superintendent of the King William County School system. No claim or allegation is made against Dr. Jones. Rather, Dr. Jones is named in his official capacity as School Superintendent for the purpose of this Court having a party entity to which it may direct its orders and requirements pursuant to the claims asserted against the School Board in this case.

10. Patricia K. Waltman is a "citizen" within the meaning of section 505(g) of the CWA, 33 U.S.C. § 1365(g).

11. Defendant King William School Board is a "person" within the meaning of the CWA, 33 U.S.C. § 1362(5).

**Statement of Facts**

12. Waltman owns farm property located in King William County, a portion of which adjoins land owned by the King William County School Board. Waltman has resided on her property since 1989, and uses the land for farm use, dog training, and a residence.

13. When Waltman purchased her property the School Board did not have a storm water retention basin located next to the Waltman property, and did not discharge storm water onto the Waltman property.

14. In 2006, the School Board began to enlarge the athletic complex on the School grounds. According to contract and consultant documents, the School Board proposed to re-grade approximately 17 acres of School land, including the existing athletic fields, grading new fields, demolition of existing facilities, installation of new field surfaces, fencing, building pads, utilities, irrigation, concrete sidewalks, and storm water improvements. As part of these improvements, the School Board constructed a new, large "storm water retention basin" which was designed to collect nearly all of the storm water from the property improvements. The overflow discharge pipe of this new retention basin was pointed squarely at the Waltman property line, not ten feet away.

15. On or about March 1, 2007, the storm water retention basin began receiving collected storm water from the School site, and also immediately began to overflow from its point source outflow onto the Waltman property. The first indication of storm water run-off for Waltman was on or about March 4, 2007, when the historically crystal clear, spring-fed pond on their property turned muddy. Discharges from the School storm water retention basin continued. A Virginia Department of Conservation and Recreation (DCR) inspection on April 26, 2007 found continued violations of state and local erosion and sediment control requirements, including: (1) stormwater protection plan still not final as required; (2) construction problems still persisting; (3) discharge channel inadequate; (4) inspection records not available as required; and (5) outlet pipes improper and insufficient rip-rap to prevent damage to adjoining property.

16. On May 15, 2007, the Chairperson of the King William County School Board, fully aware of the Waltman problems, wrote to William E. Duke, President of Duke Contracting, requesting that Duke contact the Waltmans, determine the damages and perform the remedial work at Duke's expense. The School Board, never, at any time, initiated contact with the Waltmans or took measures to ensure that the property damage was compensated or taken care of, other than to rely exclusively on Duke (who had no interest in correcting anything at his expense), and attempted to hide behind the School Board's limited immunity. Duke ignored the request and his counsel later advised Waltman's counsel that the School Board is immune to any lawsuit.

17. The discharges from the storm water basin continue, and the Waltman pond water quality continues to deteriorate into a muddy, green, turbid waste basin, which not even the ducks wish to inhabit. Erosion of the pond dam continues from pond overflows during storm events, and the dam is increasingly in danger of failure. Prior to these events, the Waltman pond had no history of overflows, except through the pond standpipe.

18. Throughout 2008 and 2009, and to the filing of this lawsuit, the School Board storm water retention basin has continued to discharge during storm events onto the Waltman land. The discharges have now cut a permanent ditch several feet wide directly through the Waltman property leading to their spring feed pond. During storm events there is little the Waltmans can do but stand aside as the torrents of water coming down the ditch create a dangerous condition.

19. All efforts to correct and remedy the storm water discharges to the Waltman property have failed to obtain relief. The School Board's contractor refuses to do anything, the School Board refuses to act and claims, through its counsel, absolute immunity to any claim by

Waltman. No administrative remedy is available to Waltman, and if the School Board has immunity to these claims, there is no remedy anywhere under Virginia law. The School Board storm water retention basin discharges onto the Waltman property continue unabated during every significant rain storm, and with such frequency and regularity as to make it impossible for Waltman to contain or manage such water diversions on the Waltman property.

20.    The School Board intentionally, and by its agents of whose action the School Board had full knowledge, with deliberate indifference and with reckless disregard to the property and property rights of Waltman, developed the School Board property without adequate drainage, and forced such drainage onto the Waltman land.

21.    As a result, the Waltman property received, sustained and was otherwise subject to flooding, erosion, and inundation of their land and water resources far more profound and egregious than any storm water run-off, if any, prior to the School Board construction; and the catastrophic flooding and storm water discharges have caused extensive, substantial and devastating damage to and loss of lawfully owned real and personal property.

22.    Defendant does not have a National Pollutant Discharge Elimination System ("NPDES") Permit, issued pursuant to the CWA, to discharge pollutants into the Waltman pond, Boshers Millpond, Mancuin Creek, and the Pamunkey River, all of which are navigable waters of the United States.

23.    An NPDES permit is a permit, issued by either the federal or state government, which allows limited discharges of pollutants from a point source (i.e. pipe, ditch, tunnel, pond or channel); however, any violation of a term or condition embodied in a NPDES permit constitutes a violation of the CWA. 40 C.F.R. §122.41(a).

24. EPA has authorized the Commonwealth of Virginia Department of Environmental Quality ("DEQ") to issue NPDES permits, which in Virginia are called VPDES permits.

25. The holder of a VPDES permit is subject to government enforcement for failure to comply with permit conditions. 33 U.S.C. §§ 1319, 1342(b)(7).

26. Given the government's limited resources, the CWA also authorizes citizens to file a suit for violation of the terms of a NPDES permit. 33 U.S.C. § 1365(a).

27. Based on information and belief, Defendant has not received a VPDES discharge Permit from either EPA or DEQ for its discharge of pollutants into the Waltman pond, which has a direct connection to other waters of the Commonwealth and waters of the United States. Plaintiff has no knowledge that Defendant has even applied for such permit.

28. The King William High School sediment pond is a "point source" as that term is defined at 33 U.S.C. § 1362(14) and 40 C.F.R. § 122.2.

29. Effluent discharged into the Waltman pond, Boshers Millpond, Mancuin Creek, and the Pamunkey River, which are waters of the Commonwealth and waters of the United States, constitutes "discharge(s) of pollutant(s)" as that term is defined at 33 U.S.C. § 1362(12) and 40 C.F.R. § 122.2.

30. The Waltman pond, Boshers Millpond, Mancuin Creek, and the Pamunkey River are "navigable water(s)" and "water(s) of the United States" as those terms are defined at 33 U.S.C. § 1362(7) and 40 C.F.R. § 122.2.

31. After appropriate pre-suit notice, citizen suits may be brought "against any person...who is alleged to be in violation of...an effluent standard or limitation...." 33 U.S.C. §1365(a).

32. The term "effluent standard or limitation" includes a "permit or condition

thereof." 33 U.S.C. §1365(f)(6).

33. Defendant is discharging pollutants from its sediment pond into the Waltman pond, Boshers Millpond, Mancuin Creek, and the Pamunkey River, which flows into the York River and the Chesapeake Bay.

34. The pollutants being discharged by Defendant include, but are not limited to sediment, nitrogen, and phosphorous, and the presence of such pollutants in the discharge from the storm water retention basin and in the Waltman Pond have been affirmed by repeated sampling and analysis.

35. Sediment, nitrogen, and phosphorous contamination is a threat to public health, aquatic life, and the environment, and pollutes and contaminates the Waltman pond.

36. Since at least March 2007, the sediment retention pond has discharged pollutants during and after precipitation events into the Waltman pond more than a dozen times.

37. Defendant has taken no effective, if any actions at all, to reduce pollutant concentrations in the effluent discharge from the sediment pond. The storm water retention pond has no design or practical ability to treat or remove nitrogen or phosphorus pollutants, and limited ability to retain and treat sediment runoff loads. The pond is supposed to be designed not to discharge, but to retain such storm water until it seeps into the soil or evaporates.

38. Defendant does not operate a mechanical or biological treatment system to cleanse the discharge of effluent from the sediment pond.

39. Defendant does not have a valid NPDES/VPDES permit allowing discharge of pollutants from the sediment pond into the Waltman pond, Boshers Millpond, Mancuin Creek, and the Pamunkey River.

40. Defendant's discharge into the Waltman pond contains pollutants in sufficient quantities to cause, potentially cause, or measurably contribute to an in-stream excursion above an assigned water quality standard, a whole effluent toxicity criterion, or a narrative water quality standard.

41. Since at least March 2007, Defendant has continuously and repeatedly failed to obtain a valid NPDES permit for its discharge of pollutants from the sediment pond into the Waltman pond, Boshers Millpond, Mancuin Creek, and the Pamunkey River.

42. Based on available information, Plaintiff believes that unlawful discharges from the King William High School athletic complex have repeatedly violated, and will continue to violate: (1) Section 301(a) of the federal CWA, 33 U.S.C. § 1311(a); (2) the Virginia State Water Control Law, Va. Code § 62.1-44.2, *et seq.*; and (3) VPDES permit requirements by not obtaining a valid permit for its unlawful discharges of storm water with illegal amounts of several pollutants into Claimant's pond, which empties into the above-mentioned waters, which are tributaries of the Chesapeake Bay, and all of which are "waters of the Commonwealth" and "waters of the United States."

### Claim

43. Paragraphs 1-42 are incorporated herein by reference and realleged herein.

44. Defendant's sediment pond outfall discharges pollutants into the Waltman pond, Boshers Millpond, Mancuin Creek, and the Pamunkey River, which are tributaries of the York River and the Chesapeake Bay.

45. The sediment pond outfall is a point source.

46. The sediment pond outfall discharges pollutants into the Waltman pond, Boshers Millpond, Mancuin Creek, and the Pamunkey River, which are tributaries of the York River and the Chesapeake Bay.

47. Defendant does not have a valid NPDES/VPDES permit to discharge pollutants into the Waltman pond, Boshers Millpond, Mancuin Creek, and the Pamunkey River, which are tributaries of the York River and the Chesapeake Bay.

48. Repeatedly for the last twenty-two months to date, Defendant has been in violation of CWA Sections 301 and 402, 33 U.S.C.§§ 1311, 1342, and 40 C.F.R. 122.1(b) by discharging pollutants from a point source (the sediment pond outfall) into the Waltman pond, Boshers Millpond, Mancuin Creek, and the Pamunkey River, which are tributaries of the York River and the Chesapeake Bay, without a valid NPDES permit.

49. The repeated discharge of pollutants from the School Board retention basin is documented by (1) samples and laboratory results from retention basin discharge events in September, October, November, December 2009 and January 2010, as verified by the report from the independent consultant and attached as Exhibit B; and (2) photographs taken during these same months by the Plaintiffs, all attached as Exhibit C. The storm water retention basin continues to intermittently discharge pollutants, depending on precipitation, at the time of this filing; and because the storm water retention basin pond is not adequately designed to retain all storm water run-off, has not retained such run-off for over two years, and has had not significant structural or design improvements, there is reason to believe that such discharges will continue unabated unless enjoined by this Court.

## Relief Requested

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief

to correct Defendant's significant and ongoing violations of law:

    A.    Declare Defendant to have violated and to be in violation of the CWA, 33 U.S.C. §§ 1311 and 1342;

    B.    Enjoin Defendant from operating the sediment pond without a valid NPDES/VPDES permit that complies with all terms of the CWA and regulations;

    C.    Issue a permanent injunction requiring Defendant to permanently comply with all terms of the CWA and regulations;

    D.    Order Defendant to pay to the United States a civil penalty of up to $27,500 per day for each violation of the CWA;

    E.    Order Defendant to pay Plaintiff's their costs of litigation, including but not limited to reasonable attorney and expert witness fees, as authorized by the CWA; and,

    F.    Grant such other relief as the Court deems necessary and proper.

    Respectfully submitted,

    Patricia K. Waltman
    By counsel

David S. Bailey, Esq. (Va. Bar 24940; DC Bar 455518)
Jeter M. Watson, Esq. (Va. Bar 19448)
The Environmental Law Group, PLLC
P.O. Box 6236
Richmond, Virginia 23230
TEL: 804-433-1980
FAX: 804-433-1981
Email: dsbailey@igc.org
       bmwatson3@aol.com

Tammy L. Belinsky, Esquire (Va. Bar 43424)
The Environmental Law Group, PLLC
9544 Pine Forest Road

Copper Hill, Virginia 24079
Telephone: 540-929-4222
Facsimile: 540-929-9195
Email: tambel@hughes.net

James C. Breeden, Esq. (Va. Bar 08942)
Breeden and Breeden, P.C.
P.O. Box 35
Irvington, Virginia 22480
Telephone: 804-438-9595
Facsimile: 804-438-9594
Email: jbreeden@kaballero.com

Date: February 3, 2010