IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| PATRICIA K. WALTMAN, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 3:10CV72-HEH |
| KING WILLIAM COUNTY SCHOOL BOARD, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION
(Granting Defendants' Motion to Dismiss)

This is a civil action for declaratory judgment, injunctive relief, and the imposition of civil penalties for violations of the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. § 1251, *et seq.* and the Virginia State Water Control Law, Va. Code § 62.1-442, *et seq.* It is presently before the Court on Defendants' King William County School Board and Dr. Mark Jones's Motion to Dismiss (Dk. No. 3), filed on February 25, 2010. The Plaintiff filed no brief in opposition. For the reasons stated herein, the Court will grant the Defendants' Motion to Dismiss.

### I. Background

Since 1989, Patricia K. Waltman ("Waltman") has owned 16 acres of property in King William County, Virginia. Waltman's land, a portion of which adjoins the King William County High School (the "School"), is used for farming, dog training, and as her primary residence. Waltman's farm contains a 100 year old spring fed pond, which has a

direct connection to Boshers Millpond, Mancuin Creek, and the Pamunkey River which flows into the York River and Chesapeake Bay.

In 2006, the King William County School Board ("the School Board") decided to enlarge the School's athletic complex. This enlargement included the regradation of athletic fields, the demolishment of existing facilities, the installation of new field surfaces, and various stormwater improvements. One such improvement was the construction of a "stormwater retention basin" designed to collect water runoff from the athletic field. The discharge point for the basin was onto land owned by the School Board situated near Waltman's property line. After construction of the basin was completed, collection of stormwater from the athletic field began on or about March 1, 2007.

Several days later, the School's basin began to overflow onto Waltman's land. As a result, Waltman reported that stormwater from the basin muddied her pond, eroded the pond's dam, and eventually cut a permanent ditch several feet wide across her property. On April 26, 2007, a Virginia Department of Conservation and Recreation ("DCR") inspection found violations of state and local erosion and sediment control requirements. Later, Waltman claims the basin discharged sediment, nitrogen, phosphorus, and other pollutants onto her property more than a dozen times.

In a Complaint filed on February 3, 2010, Waltman alleged the School Board and Dr. James, as Superintendent of Schools for King William County, are in violation of the

Clean Water Act and the Virginia State Water Control Law. Specifically, Waltman claimed that by allowing the discharge of pollutants onto her property without a National Pollutant Discharge Elimination System (NPDES") permit or a Virginia Pollutant Discharge Elimination System ("VPDES") permit, the Defendants have violated 33 U.S.C. §§ 1311(a), 1342 (Sections 301 and 402 of the Clean Water Act); 40 C.F.R. 122.1(b)[1]; and Va. Code § 62.1-44.2, *et seq*. Accompanying her Complaint, Waltman attaches as Exhibit A, a notification letter of her intent to sue the School Board.[2]

The Defendants have filed this unopposed Motion to Dismiss on February 25, 2010, asserting that the School Board does not need any type of permit for the alleged stormwater discharges.

## II. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952

---

[1] 40 C.F.R. 122.1(b) is the EPA regulation that covers the scope of the NPDES permit program. For our purposes here, any violation of this regulation would fall under §§ 301 or 402 of the Clean Water Act.

[2] In Exhibit A, Waltman mentions that the School Board is in violation of two DCR permits. The first permit, General Permit DCR01-07-10241, was allegedly issued to Duke Contracting for the construction of the retention basin. The second permit, General Permit DCR01, was allegedly issued for operation of the stormwater retention basin after construction of the project. Although unclear, it appears these permits fall under the DCR's Stormwater Management Program Permit Regulations, and are entirely unrelated to the NPDES and VPDES permits, which are the subject of this claim.

3

(4th Cir. 1992). A complaint must have "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (internal quotation marks omitted). In considering a motion to dismiss under Rule 12(b)(6), the Court "must assume that the allegations of the complaint are true and construe them in the light most favorable to the plaintiff." *Martin*, 980 F.2d at 952.

As presented, Waltman's Complaint fails to satisfy the pleading standards set forth under *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). In *Iqbal*, the Supreme Court stated that, because the tenet that a reviewing court must accept all of a complaint's allegations as true does not apply to legal conclusions, *Iqbal*, 129 S. Ct. at 1949, the Court may identify which of the complaint's allegations are entitled to the assumption of truth and which allegations can be disregarded as legal conclusions. *Id.* at 1949–50. After distinguishing the well-pleaded facts from legal conclusions, the Court must then determine whether the complaint's factual allegations support a "plausible claim for relief." *Id.* at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### III. Analysis

The purpose of the Clean Water Act is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To

achieve this goal, § 301(a) of the Clean Water Act prohibits "the discharge of any pollutant" unless that discharge complies with other specified provisions of the Act, including the permitting program set forth in § 402.[3] 33 U.S.C. § 1311(a). In particular, § 402 creates a program for the issuance of NPDES permits, which allow the holder to discharge pollutants despite the prohibition set forth in § 301(a). 33 U.S.C. § 1342(p). NPDES permits may be issued by the Environmental Protection Agency ("EPA") or a state agency which has been authorized by the EPA. In Virginia, the Virginia State Water Control Board is authorized by the EPA to administer the NPDES permit program under the State Water Control Law.[4] *See* 46 Fed. Reg. 21,395 (April 10, 1981); Va. Code §§ 62.1-44.2, *et. seq.*

Under § 402(p), the Clean Water Act mandates a two-phase regulatory approach to the discharge of pollutants in stormwater. In Phase I, as found in § 402(p)(1), the EPA and state agencies are prohibited from requiring NPDES permits for "discharges composed entirely of stormwater" prior to October 1, 1994. 33 U.S.C. § 1342(p)(1). However, § 402(p)(2) provides four types of stormwater discharges that are exempt from

---

[3] The term "discharge of pollutant" means "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). For the purposes of this Motion, the Defendants do not contest the Plaintiff's allegations that the storm water discharges in issue were "point source" discharges to "waters of the United States," as those terms are defined in the Clean Water Act.

[4] The relevant permitting regulations under the Virginia State Water Control Board are 9 Va. Admin. Code § 25-31-120. The Virginia Department of Environmental Quality administers these regulations and issues permits on behalf of the Board.

this permit moratorium.[5] 33 U.S.C. § 1342(p)(2). Also, § 402(p)(2)(E) gives the EPA or authorized state agencies residual authority to designate that a stormwater discharge requires a permit if the discharge "contributes to a violation of a water quality standard or is a significant contributor of pollutants to waters of the United States." 33 U.S.C. § 1342(p)(2)(E). In § 402(p)(3), Congress specifically required NPDES permits for the § 402(p)(2) Phase I discharges and in § 402(p)(4) directed the EPA to promulgate permit application requirements for those discharges. 33 U.S.C. § 1342(p)(3)-(4).

In Phase II, Congress directed the EPA to conduct a study of those stormwater discharges not identified in § 402(p)(2). 33 U.S.C. § 1342(p)(5).[6] On December 8, 1999, the EPA promulgated the Phase II rules that expanded required NPDES permit coverage to include stormwater discharges from small municipal sewer systems in urbanized areas and small construction sites between 1 acre and 5 acres in size. 40 C.F.R. § 122.26(a)(9)(i). Additionally, in certain situations, the EPA and authorized state agencies were given residual authority to require permits for certain stormwater discharges.[7] *Id.*

---

[5] The four Phase I exemptions are: (A) a discharge with respect to which a permit has been issued under this section before February 4, 1987; (B) a discharge associated with industrial activity; (C) a discharge from a municipal separate storm sewer serving a population of 250,000 or more; (D) a discharge from a municipal separate storm sewer system serving a population of 100,000 or more but less than 250,000. 33 U.S.C. § 1342(p)(2).

[6] Section 402(p)(6) requires the EPA to issue regulations based on the results of this study. 33 U.S.C. § 1342(p)(6).

[7] The EPA or authorized state agency may exercise its residual designation authority to require a permit if: (C) the Director, or in States with approved NPDES

6

However, under the Phase II statutory regime, in stark contrast to Phase I, Congress was silent about requiring permits. § 33 U.S.C. § 1342(p)(5)-(6) (failing to hold any requirement that the EPA must use NPDES permits in its regulatory program). Therefore, the EPA declined to regulate other sources of stormwater (other than those already mentioned) because it was convinced further regulation could be done by "case-by-case post-promulgation designations by the NPDES permitting authority." 64 Fed. Reg. 68,779.

The Virginia State Water Control Board regulations, administered by the Department of Environmental Quality, require a VPDES permit for

> (1) discharges that received a permit prior to February 4, 1987; (2) discharges associated with industrial activity (including those that discharge through certain municipal separate storm sewer systems); and (3) discharges for which the State Water Control Board or the EPA Regional Administrator have determined that either (a) the discharge contributes to a violation of a water quality standard or (b) is a significant contributor of pollutants to surface waters.

9 Va. Admin. Code § 25-31-120(A)(1).

Additionally, for stormwater discharges after October 1, 1994 that do not require a permit under the above provision, the Board and EPA regional administrators reserve their

---

programs either the Director or the EPA Regional Administrator, determines that storm water controls are needed for the discharge based on wasteload allocations that are part of total maximum daily loads (TMDL's) that address the pollutant(s) of concern; or (D) the Director, or in States with approved NPDES programs either the Director or the EPA Regional Administrator, determines that the discharge, or category of discharges within a geographic area, contributes to a violation of a water quality standard or is a significant contributor of pollutants to waters of the United States. 40 C.F.R. § 122.26(a)(9)(i).

7

residual authority to require individuals to obtain VPDES permits.[8] 9 Va. Admin. Code § 25-31-120(A)(7).

Applying the standards as set forth above, even if this Court accepts the factual allegations in the Complaint as true, Waltman still fails to support a "plausible claim for relief." *Iqbal*, 129 S. Ct. at 1950. In her Complaint, Waltman fails to allege that the Defendants are required under either the Clean Water Act or the Virginia State Water Control Law to obtain a NPDES or VPDES permit. This omission is controlling for several reasons.

First, "had Congress intended to mandate NPDES permits for all Phase II discharges, it knew how to say so and would have done so." *Conservation Law Foundation v. Hannaford Bros. Co.*, 327 F. Supp. 2d 325, 331 (D. Vermont 2004) (citing *Cf. Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979)). Accordingly, the Clean Water Act "does not require the EPA to regulate all stormwater discharges, nor does it require EPA to use NPDES permits to regulate those discharges EPA does designate for regulation." *Id.* When the "Phase II regulations went into effect, a stormwater discharge

---

[8] Specifically, for discharges after October 1, 1994, not required by subdivision 1 to obtain a permit, operators shall be required to obtain a VPDES permit only if: (1) the Board or the EPA regional administrator determines that storm water controls are needed for the discharge based on waste load allocations that are part of total maximum daily loads (TMDLs) that address the pollutant(s) of concern; or (2) the Board or the EPA regional administrator determines that the discharge, or category of discharges within a geographic area, contributes to a violation of a water quality standard or is a significant contributor of pollutants to surface waters.

left unregulated fell into compliance with § 402(p) unless EPA or an authorized state agency later exercised its residual designation authority to require an NPDES permit for that discharge." *Id.* at 332. Therefore, "a stormwater discharge that complies with § 402(p) does not violate § 301(a)." *Id.* at 332. Because Waltman does not allege the Defendants' non-compliance with the permitting requirements found under § 402(p), nor does she present any use of the EPA's residual authority, she fails to set forth facts that "plausibly give rise to an entitlement to relief" under § 301(a). *Iqbal,* 129 S. Ct. at 1950.

Second, the Virginia State Water Control Law sets forth clear categories of stormwater discharge that require a VPDES permit. 9 Va. Admin. Code § 25-31-120(A)(1) and (7). Waltman, however, has failed to allege any fact that would require the Defendants to obtain a VPDES permit under § 25-31-120(A)(1) and (7) or Va. Code 62.1-44.2, *et seq*. In addition, although it is undisputed that the Board could exercise their residual designation authority to require a permit in this case, Waltman fails to allege that they have done so. 40 C.F.R. § 122.26(a)(9)(I). For these reasons, Waltman has also failed to state facts that set forth a "plausible claim for relief" under Virginia law. *Iqbal,* 129 S. Ct. at 1950. Therefore, the Defendants' Motion to Dismiss must be granted.

## IV. Conclusion

For the reasons stated above, Defendants' motions to dismiss is granted. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: March 16, 2010
Richmond, VA