IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PATRICIA K. WALTMAN, )
)
    Plaintiff, )
)
v. ) Civil Action No. 3:10CV72-HEH
)
KING WILLIAM COUNTY SCHOOL )
BOARD, *et al.*, )
)
    Defendants. )

# MEMORANDUM OPINION
(Denying Defendants' Motion for Attorneys' Fees and Denying Plaintiff's Motion to Alter or Amend Judgment)

This was a civil action for declaratory judgment, injunctive relief, and the imposition of civil penalties for violations of the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. § 1251, *et seq.* and the Virginia State Water Control Law, Va. Code § 62.1-442, *et seq.*[1] It is presently before the Court on Defendants' King William County School Board and Dr. Mark Jones's Verified Motion for Attorneys' Fees (Dk. No. 9), filed on March 30, 2010, and Plaintiff Patricia Waltman's Motion to Alter or Amend Judgment (Dk. No. 13), filed on April 7, 2010. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process at this stage. For

---

[1] In a March 16, 2010 Order, this Court granted the Defendants' Motion to Dismiss, thus closing the case.

the reasons stated herein, the Court will deny both Motions.

## I. Background

Since 1989, Patricia K. Waltman ("Waltman") has owned 16 acres of property in King William County, Virginia. Waltman's land, a portion of which adjoins the King William County High School (the "School"), is used for farming, dog training, and as her primary residence. Waltman's farm contains a 100 year old spring fed pond, which has a direct connection to Boshers Millpond, Mancuin Creek, and the Pamunkey River which flows into the York River and Chesapeake Bay.

In 2006, the King William County School Board (the "School Board") decided to enlarge the School's athletic complex. This enlargement included the regradation of athletic fields, the demolishment of existing facilities, the installation of new field surfaces, and various stormwater improvements. One such improvement was the construction of a "stormwater retention basin" designed to collect water runoff from the athletic field. The discharge point for the basin was onto land owned by the School Board situated near Waltman's property line.

On or about March 1, 2007, the retention basin began its collection of stormwater from the athletic field. Waltman contended that several days later the School's basin began to overflow onto her land. At that time, Waltman maintained that the stormwater from the basin muddied her pond, eroded the pond's dam, and eventually cut a permanent ditch several feet wide across her property. Waltman claimed that the basin discharged

2

sediment, nitrogen, phosphorus, and other pollutants onto her property more than a dozen times. On April 26, 2007, a Virginia Department of Conservation and Recreation ("DCR") inspection found violations of state and local erosion and sediment control requirements.[2]

In a Complaint filed in this Court on February 3, 2010, Waltman alleged the School Board and Dr. James, as Superintendent of Schools for King William County, were in violation of the Clean Water Act, the Virginia State Water Control Law, and various permit requirements. Specifically, Waltman claimed that by allowing the discharge of pollutants onto her property without a National Pollutant Discharge Elimination System (NPDES") permit or a Virginia Pollutant Discharge Elimination System ("VPDES") permit, the Defendants have violated 33 U.S.C. §§ 1311(a), 1342 (Sections 301 and 402 of the Clean Water Act); 40 C.F.R. 122.1(b); and Va. Code § 62.1-44.2, *et seq.*

Accompanying her Complaint, Waltman attached as Exhibit A, a notification letter expressing her intent to sue the School Board. In her letter, Waltman alleged that the retention basin was in violation of two DCR permits.[3] The first permit, General Permit

---

[2] Waltman claimed the DCR found five violations: (1) the stormwater protection plan was still not final as required; (2) construction problems still persisted; (3) the discharge channel was inadequate; (4) the inspection records were not available as required; and (5) the outlet pipes were improper and the rip-rap was insufficient to prevent damage to the adjoining property.

[3] Waltman alleges both "general permits" were boilerplate permits issued for all proposed stormwater retention basin projects.

3

DCR01-07-10241, was issued to Duke Contracting of Virginia, Inc. ("Duke"), for the construction of the retention basin.[4] This permit, authorizing project construction, was issued on May 9, 2007, after Waltman claimed construction of the retention basin was completed.[5] The second permit, General Permit DCR01 ("DCR01"), was also issued to the School Board subsequent to completion of the basin.

The Defendants filed a Motion to Dismiss on February 25, 2010, asserting that the School Board did not need any type of permit for the stormwater discharges alleged in the Complaint. Waltman failed to respond or oppose this Motion. In a March 16, 2010 Memorandum Opinion, this Court granted the Defendants' Motion to Dismiss. In that Opinion, the Court held that Waltman failed to state a plausible claim for relief under §§ 301(a) or 402 of the Clean Water Act or under Virginia law. Both pending Motions followed.

## II. Denying Plaintiff's Motion to Alter or Amend Judgment

A motion to alter or amend a judgment "is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. American Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). The Fourth Circuit has recognized three grounds for amending an earlier judgment: "(1) to accommodate an intervening change in controlling law; (2) to account

---

[4] Waltman's Complaint did not name Duke as a party to this action.

[5] Surprisingly, DCR issued this permit to Duke approximately two weeks after they found the retention basin in violation of numerous state and local erosion and sediment control requirements.

4

for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Id.* "Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.* Also, "[r]ule 59(e) may not be used to resurrect facts and legal theories already considered and rejected by the court." *Id.*

In her Rule 59(e) Motion, Waltman asks this Court to alter its prior judgment to correct what she perceives to be a clear error of law or manifest injustice. Specifically, Waltman challenges this Court's March 16, 2010 Memorandum Opinion granting the Defendants' Motion to Dismiss. Although failing to bring forth these arguments prior to judgment,[6] Waltman belatedly asks this Court to revisit the allegations contained in Exhibit A of the Complaint, which claimed the Defendants were either in violation of DCR01 or were required to obtain a separate VPDES permit for post-construction discharges from the retention basin.

The Defendants argue that Waltman fails to satisfy her burden of proving a clear error of law or manifest justice. In their brief in Opposition, the Defendants claim that Waltman's current Motion is an attempt to rehabilitate her case after failing to respond to the Defendants' Motion to Dismiss. Additionally, the Defendants contend the Plaintiff has cited no regulation that obligates the School Board to obtain a permit from the DCR

---

[6] Waltman was given an opportunity to file a brief in Opposition to the Defendants' Motion to Dismiss, however, she failed to do so.

or any other agency for the discharges from the retention basin. For this reason, the Defendants maintain that Waltman's Motion should be denied.

In her Complaint, Waltman alleged violations of regulations administered by two separate Virginia agencies– the DCR and the DEQ. The first agency, the DCR, regulates stormwater discharges from Municipal Separate Storm Sewer Systems ("MS-4's")[7] or land-disturbing activities, such as construction projects. 4 V.A.C. 50-60-310(A). When monitoring construction activities, the DCR requires discharging parties to obtain either an individual site-specific permit or a boilerplate general permit. *See* 4 V.A.C. 50-60-410(B)(3)( c), 50-60-410(B)(2)(a). The general permit, DCR01, authorizes construction site operators to discharge stormwater into the surface waters of the Commonwealth of Virginia. DCR01, Sec. I (A)(1). However, the coverage of this permit does not extend to stormwater discharges that originate "after construction activities have been completed" and the site has "undergone final stabilization." DCR01, Sec. I (B)(1).

The second state agency mentioned in Waltman's Complaint, the DEQ, regulates discharges associated with industrial activities or discharges that the State Water Control Board or DEQ/EPA regional administrator determine violate a certain water quality standard. 9 V.A.C. 25-31-120. For these types of activities, the DEQ requires dischargers to obtain a VPDES permit. *Id.*

Upon a careful re-examination of Waltman's Complaint and the Exhibits attached

---

[7] Waltman does not allege that the retention basin is a MS-4.

therein, Waltman fails to identify a clear error of law or manifest injustice in this Court's March 16, 2010 Memorandum Opinion. As required by *Ashcroft v. Iqbal*, when considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint or attached exhibits state factual allegations that support a "plausible claim for relief." 129 S. Ct. 1937, 1950 (2009). In applying this standard to the case at hand, there is an insufficient factual basis to support a plausible claim by Waltman under the regulations administered by either agency.

First, Waltman's claims of DCR01 violations are misguided. To begin, "[r]ule 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment." *Pac. Ins. Co.*, 148 F.3d at 403. Waltman had ample opportunity to clarify and support the allegations raised in her Exhibit A by filing a brief in response to the Defendants' Motion to Dismiss or by amending her Complaint. She failed to take advantage of either opportunity. Moreover, there is nothing in the text of the Complaint that addresses these purported allegations mentioned in Exhibit A.

In addition, even if this Court were to interpret Waltman's Rule 59 Motion as requesting a reconsideration based on allegations already plead in her Complaint, it is clear the DCR01 does not regulate post-construction stormwater discharges.[8] DCR01, Sec. I (B)(1). Instead, the DCR01 suggests "[p]ost-construction industrial stormwater

---

[8] DCR01 states, this "permit does not authorize stormwater discharges that originate from the site after construction activities have been completed and the site, including any temporary support activity site, has undergone final stabilization." DCR01, Sec. I(B)(1).

7

discharges *may* need to be covered by a separate VPDES permit." *Id.* [emphasis added]. Since, Waltman alleged the Defendants violated the DCR01 by discharging stormwater after construction of the retention basin and post-construction discharges at most require a discharger to obtain a VPDES permit separate from the DCR01, any purported violation of the DCR01 as alleged by Waltman, must be considered implausible.

Second, this Court rejects Waltman's allegations that the Defendants needed a separate VPDES permit under the regulations administered by the DEQ. As this Court already addressed in its March 16, 2010 Memorandum Opinion, Waltman has failed to allege any facts in her Complaint or attached Exhibits that required the Defendants to obtain a VPDES permit for either their pre-construction, construction, or post-construction discharges.[9] Furthermore, "[r]ule 59(e) may not be used to resurrect facts and legal theories already considered and rejected by the court." *Pac. Ins. Co.*, 148 F.3d at 403. Thus, Waltman fails to satisfy her burden of "correct[ing] a clear error of law or prevent[ing] [a] manifest injustice" and Waltman's Motion will be denied. *Id.*

### III. Denying Defendants' Motion for Attorneys' Fees

The Clean Water Act authorizes courts to award attorneys' fees in any citizen suit. Specifically, § 505(d) provides that "the court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable

---

[9] As the March 16, 2010 Memorandum Opinion explains, the Virginia State Water Control Law sets forth clear categories of stormwater discharges requiring VPDES permits in 9 Va. Admin § 23-31-120(A)(1)-(7). This Court found that none of these categories applied to the Defendants.

attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines that such award is appropriate." 33 U.S.C. § 1365(d). Though not compelled by the plain language of § 505(d), the Fourth Circuit has found "[w]hen the prevailing party is the defendant, the attorneys fees should be awarded only if the court finds that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Debauche v. Trani*, 191 F.3d 499, 510 (4th Cir. 1999) [internal citations omitted].

In their Motion for Attorneys' Fees, the Defendants assert that because Waltman's claims were groundless and without a basis in fact or law they are entitled to attorneys' fees. To support their request, the Defendants point to Waltman's failure to offer any basis for her cause of action and cite the Court's dismissal as proof that her action lacked foundation. Furthermore, the Defendants construe Waltman's failure to respond to their Motion to Dismiss as an abandonment of her claim and a failure to prosecute her action. Waltman responds by arguing that his Court's March 16, 2010 Memorandum Opinion misinterpreted the law and suggests that due to the complexity of the issues involved, the Defendants' request for attorneys' fees is unwarranted.

As explained in the previous section, this Court finds that Waltman failed to state a plausible claim for relief. However, due to the complexity and absence of clear guidance by the Virginia state regulatory agencies involved in these issues, it is inappropriate to construe Waltman's claim as "frivolous, unreasonable, or without foundation." *Id.* Thus,

relying on the broad discretion given to courts under § 505(d), this Court finds granting attorneys' fees in this case as inappropriate and will accordingly deny the Defendants' Motion.

## IV. Conclusion

For the reasons stated above, the Plaintiff's Motion to Alter or Amend Judgment and the Defendants' Motion for Attorneys' Fees are denied. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: April 30, 2010
Richmond, VA